549 P.2d 805 (1976)
In the Matter of the ESTATE of Frances W. NOVITT, a/k/a Frances White Novitt, Deceased.
Norton T. NOVITT, Plaintiff-Appellant,
v.
The AMERICAN NATIONAL BANK OF DENVER, Trustee, and the University of Colorado School of Medicine, Defendants-Appellees.
No. 75-644.
Colorado Court of Appeals, Div. I.
April 22, 1976.
*806 John J. Gaudio, P. C., Denver, for plaintiff-appellant.
Dawson, Nagel, Sherman & Howard, William S. Hershberger, George D. Dikeou, Denver, for defendants-appellees.
Selected for Official Publication.
COYTE, Judge.
Plaintiff, Norton T. Novitt, appeals from a decision of the Denver Probate Court partially disallowing his election to take a one-half share in the augmented estate of his deceased wife Frances as provided for in § 15-11-403, C.R.S.1973, and disallowing his claims to the exempt property allowance and to the statutory family allowance as provided in §§ 15-11-402 and 15-11-403, C.R.S.1973, respectively. We affirm.
Plaintiff's deceased spouse entered into a Trust Agreement with the American National Bank (Trustee) on May 16, 1969, by the terms of which she "sold, assigned, transferred and conveyed" to the Trustee certain properties and securities to hold for the purposes therein stated. A provision in the document instructed the Trustee, upon Frances' death, to pay the sum of $250 per month to her husband Norton out of the net income from the trust estate, and in the event that Norton became seriously ill, to pay to him additional amounts within the Trustee's discretion for his care and medical attention. Upon Norton's death, the corpus of the trust was to be distributed to certain charitable and religious institutions listed in the trust document.
In that trust document, Frances reserved to herself the powers to withdraw property from the trust estate in any amount and at any time, and to alter, amend or revoke the trust in whole or in part. The trust document was amended three times, the last amendment having been made August 6, 1974, when Frances added property to the corpus of the trust and also added the names of some beneficiaries. As a result of one amendment, Frances provided for payment of the net income from the trust estate to herself during her lifetime, and granted the Trustee the power to invade the principal to provide for her health, welfare, comfort, support or maintenance.
Frances died on August 18, 1974. On September 18, 1974, the surviving spouse, Norton, filed an election of surviving spouse to one-half the augmented estate, basing his claim on § 15-11-202(2)(a)(I), C.R.S.1973, which includes within an augmented estate any transfer under which the decedent retained at the time of his death the possession or enjoyment of the *807 property or the right to the income therefrom.
Letters testamentary were issued to plaintiff Norton Novitt on September 20, 1974. On October 30, 1974, he filed his claim for exempt property allowance and family allowance, asserting that such claims should be charged against the assets in the trust since the probate estate was insufficient. Plaintiff prayed for an order directing the Trustee to make distribution from the revocable inter vivos trust to satisfy his claims.
On May 14, 1975, the court issued its order disallowing election of the surviving spouse to one-half of the augmented estate insofar as it would affect assets transferred to the trust prior to July 1, 1974, the effective date of the Colorado Probate Code. The court ruled that the value of the property added to the trust by the August 6, 1974, amendment was available to create an augmented estate. The court relied on the language of § 15-17-101, C.R.S.1973, which provides that the Colorado Probate Code shall not impair any accrued right, and concluded that a "vested legal relationship between Settlor, trustee and beneficiary of a trust" is such a protected right. The court further held that claims for family allowance and exempt property allowance may be directed only to those assets comprising the probate estate.
Plaintiff contends on appeal that § 15-11-202, C.R.S.1973, applies to all trusts regardless of date of creation and that had the legislature intended that July 1, 1974, serve as a cut-off date it would have included such a provision. We disagree.
Section 15-17-101(d), C.R.S.1973, provides that:
"An act done before July 1, 1974, in any proceeding and any accrued right is not impaired by this code." (emphasis supplied)
This section evidences the intent of the Legislature to preserve prior existing rights and to preclude disruption of such rights due to the change in the law effected by the Colorado Probate Code.
Plaintiff argues that since the trust established by Frances was a revocable inter vivos trust no rights were vested and the beneficiaries of the trust had only mere expectancies. However, the vesting of the beneficiaries' rights is not at issue here; the pertinent issue is the rights which accrued to, and the relationship established with the Trustee as a result of the trust arrangement.
In Hageman v. First National Bank, 32 Colo.App. 406, 514 P.2d 328, this court held that under a similar trust certain rights had vested. Under the terms of that trust, the decedent retained the right to revoke the trust in whole or in part, to amend the trust agreement, to withdraw any property deposited in trust, and to receive the income from the trust during his lifetime. The court, relying on Denver National Bank v. Von Brecht, 137 Colo. 88, 322 P.2d 667, stated:
"Here the settlor, in creating the inter vivos trust, transferred title to property owned by him, and his interest therein passed immediately to the trustee and a valid trust was established. . . . At the time of decedent's death, the title to the trust property was in the trustee and therefore the property was distributable only under the trust instrument." (emphasis supplied)
In the Hageman opinion our court was analyzing rights under a trust with reference to the former statute, C.R.S.1963, 153-5-4(1), providing for an elective share. However, the same rationale is applicable to the instant trust agreement. Despite the element of revocability, title to the trust corpus was in the Trustee prior to and at the time of Frances' demise and since some rights had therefore accrued prior to July 1, 1974, § 15-17-101(d), C.R.S.1973, bars any application of Code provisions to affect and impair those accrued rights.
Similarly, Colo.Const. Art. II, Sec. 2, which bars retrospective operation of a statute *808 which results in impairment of vested rights is applicable. Also, this interpretation of the statute is supported by the recent legislative amendment of § 15-11-202(2) (b), C.R.S.1973, which now specifically excludes from the augmented estate any transfers made by a decedent prior to July 1, 1974. Hence, the court correctly entered its order disallowing the claim for a one-half share in the augmented estate insofar as such claim seeks to take from the trust assets transferred to the Trustee prior to July 1, 1974.
Plaintiff further contends that the language of the Colorado Probate Code reflects a legislative intent not to restrict claims for family allowance and exempt property allowance to the probate estate. He refers us to the language of § 15-11-404, C.R.S.1973, which provides that the surviving spouse may select property of the estate as exempt property. Relying on the definition of "estate" as "the property of the decedent. . . as originally constituted and as it exists from time to time during administration" which is provided in § 15-10-201(14), C.R.S.1973, appellant concludes that the statutory allowances should be paid to him from the trust assets, i. e., from the augmented estate since the probate estate is inadequate to satisfy these claims. We disagree.
Here, the sections providing for family and exempt property allowances must be read in conjunction with the definition of "augmented estate" in § 15-11-202(1), C.R.S.1973, to determine whether distributing such allowances from the "augmented estate" is consistent and harmonious with the creation of an "augmented estate" under the statute. Section 15-11-202(1), C.R.S.1973, defines the augmented estate as the estate reduced by funeral and administration expenses, exempt property allowances, family allowances, and enforceable claims, to which is added the sum of amounts specified in certain subsections of that section (which subsections would include in the augmented estate the value of property transferred with limitations such as those contained in the instant trust). The language of this section clearly reflects a legislative intent to establish the family allowance and exempt property allowance as items to be claimed from the probate estate, if any, to which are then added certain items to create the augmented estate. Consequently, the court properly held that the statutory allowances could not be claimed against the augmented estate and were not a charge on the trust assets.
Judgment affirmed.
SILVERSTEIN, C. J., VanCISE, J., concur.