**Matthew KENNA, Janet Kenna, Pete Skartvedt, and Ann Rilling, Plaintiffs–Appellees,**

v.

**Roxy HUBER, Executive Director of the Department of Revenue, State of Colorado, Defendant–Appellant.**

**No. 06CA0608.**

Colorado Court of Appeals, Div. IV.

June 14, 2007.

Certiorari Granted Jan. 22, 2008.

Matthew Kenna, Durango, Colorado, for Plaintiffs–Appellees.

John W. Suthers, Attorney General, Ana C. Bowman, Assistant Attorney General, Denver, Colorado, for Defendant–Appellant.

Nicholls Nicholls Biles & Bower, LLC, Jon S. Nicholls, Jill A. Curry, Denver, Colorado, for Amici Curiae Conservatorship Estate of Mirian S. Ling and Bandt Limited Partnership.

Opinion by Judge GRAHAM.

In this tax assessment case, defendant, Roxy Huber, Executive Director of the Colorado Department of Revenue (the Department), appeals the district court's summary judgment in favor of plaintiffs, Matthew and Janet Kenna, Pete Skartvedt, and Ann Rilling (collectively, the Taxpayers). We vacate the judgment and remand for further proceedings.

Plaintiffs Pete Skartvedt and Ann Rilling are husband and wife, as are plaintiffs Matthew and Janet Kenna. The two couples owned property located in La Plata County as tenants in common. In January 2000, they donated a conservation easement on the property to the La Plata Open Space Conservancy and then sold the property to Durango Nature Studies at a reduced price. The fair market value of the conservation easement was $154,700.

The version of the Conservation Easement Tax Credit Act, § 39–22–522(2), in effect when the donation was made provided that each "taxpayer" who donated a conservation easement could claim a credit not to exceed $100,000 per donation over a twenty-year period. Colo. Sess. Laws 1999, ch. 247 at 976. "Taxpayer" was then defined as "a resident individual or a domestic or foreign corporation [with certain tax exempt status]." Colo. Sess. Laws 1999, ch. 247, § 39–22–522(1) at 976.

The two couples split the value of the easement ($154,700) and each took a tax credit of $77,350. In 2000 and 2001, each

couple received credits and refunds for the conservation easement without objection from the Department.

In December 2002, the Department promulgated Regulation 39–22–522(2)(e)(I), 1 Code Colo. Regs. 201-2, which stated: "The total credit generated by the donation of a perpetual easement in gross by tenants in common is limited to $100,000." The Regulation became effective on March 1, 2003.

Relying on this Regulation, the Department issued separate notices of deficiency to the Taxpayers to recoup the tax credits and refunds that were issued to them in 2000 and 2001. The Taxpayers contested the assessment, but the Department declined relief and issued its final determination on April 20, 2005. The Department concluded that the Conservation Easement Tax Credit Act allowed only one credit per donation and that the credit must be divided between the parties contributing to the donation.

The Taxpayers filed an appeal of the final determination in district court. Upon cross-motions for summary judgment, the district court ruled in favor of the Taxpayers. The district court relied upon the 2001 version of § 39–22–522(4), Colo. Sess. Laws 2001, ch. 133 at 396 (effective August 8, 2001 to January 1, 2003), which provided, in relevant part:

(a).... The amount of the credit allowed pursuant to this subsection (4) shall not exceed one hundred thousand dollars per donation. In no event shall a credit claimed by a taxpayer filing a joint federal return or the sum of the credits claimed by taxpayers filing married separate federal returns exceed the dollar limitation set forth in this paragraph (a).

(b) In the case of a partnership, S corporation, or other similar pass-through entity that donates a conservation easement as an entity, the amount of the credit allowed pursuant to subsection (2) of this section shall be allocated to the entity's partners, members, or shareholders in proportion to the partners', members', or shareholders' distributive shares of income from such entity. The total aggregate amount of the credit allocated to said partners, members, or shareholders shall not exceed the dollar limitation set forth in paragraph (a) of this subsection (4).

The district court concluded that § 39–22–522 did not include tenants in common in the category of taxpayers required to split the $100,000 conservation easement credit. The court reasoned that, because Regulation 39–22–522(2)(e) specifically provided that tenants in common must split the total conservation easement credit, it was an improper extension of § 39–22–522 and therefore void.

I.

Summary judgment is appropriate only if the pleadings and supporting documents demonstrate that there is no genuine issue for trial as to any material fact and that the moving party is entitled to judgment as a matter of law. C.R.C.P. 56; *McLane W., Inc. v. Dep't of Revenue*, 126 P.3d 211, 214 (Colo.App.2005). Here, the parties agree that there is no dispute as to any material fact. We review orders granting summary judgment de novo. *McLane W., Inc. v. Dep't of Revenue, supra*, 126 P.3d at 214.

II.

The Department contends that the district court erred in concluding that Regulation 39–22–522(2)(e) improperly interprets § 39–22–522 and is therefore void. Specifically, the Department argues that Regulation 39–22–522(2)(e) merely clarifies that tenants in common must split the $100,000 credit under § 39–22–522. We disagree.

■ When construing a statute, reviewing courts should first consider the statutory language and give the words their plain and ordinary meaning. If the meaning is unambiguous, courts should not resort to interpretive rules of statutory construction, such as the legislative intent. *Town of Telluride v. Lot Thirty–Four Venture, L.L.C.*, 3 P.3d 30, 35 (Colo.2000); *Bradshaw v. Cherry Creek Sch. Dist. No. 5*, 98 P.3d 886, 889 (Colo.App. 2003).

■ Generally, we give deference to the interpretation of a statute by the agency

charged with its enforcement. However, an agency's interpretation is not binding if it is inconsistent with the clear language of the statute or with the legislative intent. *Hanson v. Colo. Dep't of Revenue*, 140 P.3d 256, 260 (Colo.App.2006). Where an agency's regulations exceed the scope of the statute for which they were written, they are void. *See, e.g., Sears v. Romer*, 928 P.2d 745 (Colo. App.1996). Indeed, here, the Department appears to have interpreted the statute in at least two different ways. The Taxpayers actually received a credit based upon their donations, giving some indication that the Department's first interpretation tracked with the Taxpayers', although the Department's interpretation certainly changed by the time Regulation 39–22–522(2)(e) was promulgated.

■ Initially, we note that the district court applied the 2001 version of § 39–22–522, which became effective on August 8, 2001, after the Taxpayers donated the conservation easement. *See* Colo. Sess. Laws 2001, ch. 133, § 8 at 397. However, we conclude that the 1999 and 2001 statutes are not materially different in this respect and that the Regulation contradicts both versions.

As previously stated, the 1999 version of the Conservation Easement Tax Credit Act provided that "there shall be allowed a credit [not to exceed $100,000] . . . to each taxpayer who donates during the taxable year all or part of the value of a perpetual conservation easement in gross." Colo. Sess. Laws 1999, ch. 247, § 39–22–522(2) at 976. "Taxpayer" was defined as "a resident individual or a [tax exempt] domestic or foreign corporation." Colo. Sess. Laws 1999, ch. 247, § 39–22–522(1) at 976.

The 2001 amendments specified that the following taxpayers were required to split the conservation easement tax credit: a taxpayer filing a joint federal return; taxpayers filing married separate federal returns; and a "partnership, S corporation, or other similar pass-through entity." *See* Colo. Sess. Laws 2001, ch. 133, § 39–22–522(4) at 396. The definition of "taxpayer" was amended to include "a partnership, S corporation, or other similar pass-though entity, estate, or trust that donates a conservation easement as an entity, and a partner, member, and subchapter S shareholder of such pass-though entity." *See* Colo. Sess. Laws 2001, ch. 133, § 39–22–522(4) at 396.

We conclude that, as relevant here, both the 1999 and 2001 versions of the statute are unambiguous. While the 1999 statute did not specify that any taxpayer was required to split or allocate the tax credit, the 2001 statute identified specific persons and entities required to allocate the credit. Tenants in common were not mentioned among those taxpayers required to allocate. Had the General Assembly intended to include tenants in common, it could have expressly done so, but it did not. We will not read such a provision into the statute. *See Rook v. Indus. Claim Appeals Office*, 111 P.3d 549, 552 (Colo.App.2005). Furthermore, the definition of "taxpayer" did not exclude tenants in common or operate to join together tenants in common as one taxpayer. *See* Colo. Sess. Laws 1999, ch. 247, § 39–22–522(1) at 976; Colo. Sess. Laws 2001, ch. 133, § 39–22–522(1) at 395.

This interpretation of the statute is supported by the recent legislative amendment of § 39–22–522, C.R.S.2006, which became effective after judgment was rendered in this case. The statute now provides in relevant part:

> For income tax years commencing on or after January 1, 2000, in the case of a joint tenancy, tenancy in common, partnership, S corporation, or other similar entity or ownership group that donates a conservation easement as an entity or group, the amount of the credit allowed pursuant to subsection (2) of this section shall be allocated to the entity's owners, partners, members, or shareholders in proportion to the owners', partners', members', or shareholders' distributive shares of income or ownership percentage from such entity or group. For income tax years commencing on or after January 1, 2000, but prior to January 1, 2003, the total aggregate amount of the credit allocated to such owners, partners, members, and shareholders shall not exceed one hundred thousand dollars, and, if any refund is claimed pur-

suant to subparagraph (I) of paragraph (b) of subsection (5) of this section, the aggregate amount of the refund and the credit claimed by such partners, members, and shareholders shall not exceed twenty thousand dollars for that income tax year.

Section 39–22–522(4)(b), C.R.S.2006.

This amendment, read in contrast to the former versions, supports the district court's and our conclusion that the former versions of the statute did not require tenants in common to split the conservation easement tax credit. *Cf. Wilson v. Hill*, 782 P.2d 874, 875–76 (Colo.App.1989); *In re Estate of Novitt*, 37 Colo.App. 524, 527, 549 P.2d 805, 808 (1976).

Contrary to the 1999 and 2001 versions of the statute, Regulation 39–22–522(2)(e)(I) states that "the total credit generated by the donation of a perpetual easement in gross by tenants in common is limited to $100,000." A regulation may only carry into effect the will and policy established by the General Assembly, and an administrative body has no power to impose a new tax; only the General Assembly may originate taxes. Colo. Const. art. III & art. V, § 31; *Meyer v. Charnes*, 705 P.2d 979, 983 (Colo.App.1985). The Department's attempt to alter the meaning of § 39–22–522 by regulation is void. *See Meyer v. Charnes, supra*, 705 P.2d at 983. We therefore agree with the district court's conclusion that the regulation contradicts the statute and is void.

We are unable to determine, however, whether the 2006 amendment might apply retroactively to require a conclusion contrary to that reached by the district court. Although the 2006 statute purports to apply to tax years 2000 and later, it does not clearly state that it is retroactive. Furthermore, facts and circumstances may exist that would bar the retrospective application of the 2006 amendment.

These facts were not developed in the district court, and that court never had an opportunity to consider the 2006 amendment, or whether and to what extent it might be retroactive and, if so, whether there might be some equitable bar to its retrospective application. *See Martin v. Bd. of Assessment Appeals*, 707 P.2d 348 (Colo.1985); *Mission Viejo Co. v. Bd. of Equalization*, 942 P.2d 1251 (Colo.App.1996); *see also United States v. Carlton*, 512 U.S. 26, 114 S.Ct. 2018, 129 L.Ed.2d 22 (1994).

Therefore, the judgment is vacated, and the case is remanded to the district court for determination whether the 2006 amendment applies retroactively and, if so, whether its application constitutes unconstitutional retrospective legislation in light of the particular facts surrounding the taxpayer credits previously approved. If the court determines that the 2006 amendment applies, the court should also consider the Taxpayers' additional arguments for summary judgment, which it did not address in the original summary judgment order. If the court determines that the 2006 amendment does not apply, it shall reinstate the judgment in favor of the Taxpayers.

Judge VOGT and Judge HAWTHORNE concur.