[No. 3814.]

SMITH V. SMITH.

24 527
d30 519

1. FRAUDULENT CONVEYANCE.

A husband may absolutely dispose of his property during his life, without the concurrence of his wife and exonerated from all claim by her, provided the transaction is not merely colorable. If the disposition be *bona fide* and no right is reserved to him, though made to defeat the right of the wife, it will be good. But if the disposition be colorable only, and made with the intention of reserving to himself the exclusive dominion and control, and right to use and enjoy the property during his life, and at the same time to deprive the wife of her right as heir, it is a fraud on the rights of the wife and will be set aside.

2. SAME.

Deeds made by a husband, conveying his property to his children, and withheld from record for four years and until the death of the grantor, he in the mean time exercising control over and enjoying the use of the property, leads strongly to the conclusion that they were so withheld as a result of an understanding between the

grantor and grantees, and that the grantees were guilty of collusion in the matter to prevent information of the transfers reaching the wife of the grantor.

3. LAW OF THE CASE.

Rulings made by the supreme court on the review of a case become the law of the case and are not open for consideration on a subsequent review of the case, unless a new and different state of facts has been established on the new trial.

*Appeal from the District Court of Arapahoe County.*

Mr. DAVID MITCHELL and Mr. N. M. LAWS, for appellant.

Mr. W. C. KINGSLEY and Messrs. BARTELS & BLOOD, for appellee.

MR. JUSTICE GODDARD delivered the opinion of the court.

This case, consolidated with two other like cases, was before us on a former appeal, *Smith et al. v. Smith*, 20 Colo. 480, and many of the questions now presented were then considered and determined. It will be seen by a reference to the statement of the case as there made, that the object of the action is to compel the appellant to convey to appellee a certain interest in real estate alleged to have been conveyed to him by his father, the husband of appellee, in fraud of her rights. It also appears from the opinion then rendered that the complaint stated a cause of action, and upon the evidence contained in the record, the appellee was entitled to the relief sought; but the judgment in her favor was reversed upon the sole ground that the district court erred in consolidating the cases, and thereby preventing the appellant and the other defendants from fully presenting their defenses. In so far as the specifications of error challenge the sufficiency of the complaint, or the right of appellee to introduce evidence in support of its averments, or the correctness of any other of our rulings upon the former review, they are not now open to consideration. Under the doctrine of the "law of the case" the conclusions then announced

are controlling upon this review, unless a new and different state of facts has been established on the new trial. It only remains, therefore, for us to determine whether the facts developed upon the last trial are so materially different from those disclosed in the former record as to take the case out of the rule laid down in our former opinion. We accepted as a correct statement of the law, the following from Kerr on Fraud and Mistake.

" There can be no doubt of the power of a husband to dispose absolutely of his property during his life, independently of the concurrence, and exonerated from the claim of his wife, provided the transaction is not merely colorable, and be unattended with circumstances indicative of fraud upon the rights of the wife. If the disposition of the husband be *bona fide*, and no right is reserved to him, though made to defeat the right of the wife, it will be good against her."

And the Chief Justice, speaking for the court, used this language :

" The proof shows that these three several deeds were held from record for the period of four years after their execution. If one of these deeds had been witheld from record for that length of time, this would be a suspicious circumstance, while the fact that all were thus withheld leads very strongly to the conclusion that they were so withheld as a result of an understanding between the grantor and the three grantees, and that these grantees were guilty of collusion in the matter for the purpose of preventing information of the transfer from reaching the wife of the grantor, and to permit the grantor in the meantime to continue to exercise exclusive dominion and control over the property. * * * It is not necessary in this case, and it is not our intention to say anything that will prevent the husband, during his lifetime, from selling his personal property, or transferring his real estate for such consideration as he may be willing to accept, or without consideration, provided always that the transaction shall be absolute and *bona fide*, and not colorable merely, but what we do say is, where, as here, the complaint charges, and the evidence shows, that

VOL. XXIV—34

the transaction complained of is colorable only and resorted to by the husband for the purpose of defeating his wife's right as his heir, he hoping thereby to obtain the full benefit of the property to the last hour of his life, and at the same time being able to deprive her of all interest therein as his heir, is as much of a fraud on the part of the husband as it is for a debtor, having in contemplation the incurring of an indebtedness, to put his property beyond his control."

While the condition of the appellee is referred to elsewhere in the opinion as emphasizing the inequitable nature of the transaction, the circumstances that vitiate the transfer are that the transaction is merely colorable, and was resorted to by the grantor to defeat appellee's right as heir, and the retention by him of exclusive dominion and control of the property, and the reservation to himself of the right to use and enjoy it during his lifetime. Upon this feature of the case the court below made the following findings of fact:

" That on the said 28th day of August, 1888, the said Horace G. Smith made and executed three certain conveyances to his said three children for the nominal consideration of One Dollar each, one to the defendant herein and hereinafter particularly referred to, whereby he pretended to convey about one-third in value of all of his said real estate; * * * that none of said deeds were filed for record until the 16th day of August, A. D., 1892; that the said plaintiff had no knowledge of the making or the existence of said deeds until after the death of the said Horace G. Smith; that from the time of making said deeds to the time when said deeds were filed for record as aforesaid, the said Horace G. Smith retained the possession, dominion, and control over the property described therein, and during all of said time he received the rents, income and revenues therefrom, and exercised the exclusive rights of ownership in all of said property the same as if said deeds had never been executed; that said pretended conveyances of the said Horace G. Smith were a mere device and contrivance by which the said Horace G. Smith, not parting nor intending to part with the dominion

or control over said real estate during his life, sought and endeavored at the time of his death, to deprive the plaintiff of the benefits conferred upon her as an heir of her husband under the statutes ; that said conveyance to the said defendant Horace G. Smith, Jr., was and is colorable merely and was resorted to by the husband of the said plaintiff for the purpose of defeating the plaintiff's rights as his heir, he hoping thereby to obtain the full benefit of the property to the last hour of his life, and at the same time to be able to deprive her of all interest therein as his heir.

" The court doth further find that all of the allegations in the plaintiff's complaint are true as therein alleged, and that the allegations contained in the answer of the said defendant are not true."

These findings clearly bring the case within the rule announced, and are decisive of this controversy.    While it is true that the evidence is conflicting, the weight and preponderance supports the court's conclusion ; and under the well settled rule we are precluded from disturbing its findings.

The error assigned upon the admission of testimony might be disregarded as too general to require notice ; but upon examination of the evidence complained of, while some of it might be objectionable, we are satisfied that its admission in no way prejudiced defendant's case.    Upon a careful examination of the record, we perceive no error that would justify a reversal.    The judgment of the district court is accordingly affirmed.

*Affirmed.*

CAMPBELL, J.    When this case was here upon the first appeal, I dissented from the conclusions then reached by my brethren (22 Colo. 480).    I then believed, and do now, that in making the conveyance attacked the grantor did only what he had the strict legal right to do ; and that neither under the law nor the facts is the plaintiff entitled to a judgment.    But upon this second appeal my associates find from the record, in which finding I do not concur, that the case

as made upon the second, is substantially the same as upon the first, trial below. Though the majority of this court in the case of *Fisher v. Seymour*, 23 Colo. 542, without comment, departed therefrom, yet it has been the doctrine of this court, which in this case is again announced, that the conclusions reached by an appellate court upon a former appeal are *res judicata* upon the points decided, and, upon a second review, must be accepted as the law of the case. *K. P. Ry. Co. v. Bayles*, 19 Colo. 348, and cases cited.

If, in this case, the findings of fact by the trial court—from which it appears in the view there taken that the case made was the same as upon the former trial—are accepted as conclusive upon us, and there was evidence to support the same (which the majority of this court has determined), it would necessarily follow under the doctrine of the law of the case that the judgment should be affirmed.

Were this cause now here for the first time, or were it between other parties, I should not hesitate, both because of my view of the law, and of the facts which this record discloses, to vote for a reversal of the judgment. I would feel it my duty to do so, irrespective of the doctrine of " the law of the case," for the reason that the decision here is, in my judgment, fundamentally wrong in principle and unjust to the defendants, and its effect as a precedent should be rendered nugatory at the earliest moment.